BURNETT, Appellant, v. NEW ORLEANS PUBLIC SERVICE INC.

---

(January 2, 1928. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. Louisiana Digest—Street and Interurban Railroads—Par. 34.

The plaintiff rests her case upon two propositions:

1st. That the car was started while she was upon the steps in the act of descending, and,

2nd. That the automatic steps were raised while she stood upon them, and her foot was thereby caught in the doors as they closed.

Held: The first proposition is not established with sufficient certainty to entitle plaintiff to a judgment, and the second is impossible as defendants' evidence shows.

Appeal from Civil District Court for the Parish of Orleans. Hon. Porter Parker, Judge.

Action by Rebecca Burnett, wife of Dallas West, against New Orleans Public Service Inc.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Norman, Breckwaldt & Schwartz, of New Orleans, attorneys for plaintiff, appellant.

Benjamin W. Kernan, of New Orleans, attorney for defendant, appellee.

CLAIBORNE, J. The plaintiff having suffered an injury in descending from a car of the defendant company sues it for damages.

She alleged that on January 24th, 1925, at about 8:20 P. M., she was a passenger in one of defendant's cars; that while in the act of leaving said car she had placed her left foot in the step to descend upon the street, but before she could take another step with her right foot, the conductor rang the bell for the motorman to start, and began pulling on the folding doors before she had cleared the platform with her right foot; that the operation of closing the doors also lifted the step; that the step being pulled upward by the

conductor and the sudden starting of the car threw her forward, and the folding doors caught her right foot causing her to fall forward on her knees and front portion of her body; that she was unable to rise after her fall and had to be assisted by two pedestrians; that she was unable to walk and was carried to her home; that she weighs 215 pounds, and since the accident has been unable to leave her bed or stand upon her legs at all and that she is informed it will be a long time before she will recover; that she suffered contusions and bruises of her knees and hip and internal injuries in her abdominal regions; that her injuries were caused "by the deliberate, malicious, wanton, wilful, and unlawful action on the part of the defendants' employees"; that it was the duty of said employees to permit plaintiff sufficient time to disembark from the car and not to start the car or to close said doors and raise the mechanical step before plaintiff had had an opportunity to safely get upon the street; for all of which plaintiff claims $5000 damages.

The defendant denied all charges of negligence and liability, and averred that a car of the Freret Street Line stopped on Erato street between Saratoga and Rampart, and while the car was so stopped the plaintiff alighted from it and in so doing fell; that her fall was due to her awkwardness in alighting from the car or from the character of the shoes which she wore and her failure to exercise due care.

There was judgment in favor of defendant, and plaintiff has appealed.

The plaintiff introduced five witnesses.

Victor Jones testified that the accident happened between eight and half-past eight P. M. in the center of Erato street, between Rampart and Saratoga streets, from a Freret street car; the rear of the car was about 150 feet from Rampart street; in the statement he gave plaintiffs' attorney the number of the car as 965. There were two cars in front of the Freret car; the nearest to it was the Louisiana Avenue and the next the Clio car; he was in his automobile about 20 feet behind the Freret car; he was somewhat to the right or uptown side of the street where passengers are discharged; six or eight passengers got off of the car; plaintiff was the last person to leave the car; he explains the accident as follows: "When the car moved off, it threw her; the conductor closed the door and one of her feet was caught in the step of the car, which threw her into the curbing in the street near the curbing"; he does not know which foot; he took the names of several witnesses who saw the accident, and then took the plaintiff home in his car; at the time of the accident witness was employed as a federal prohibition agent; he never saw her since the accident; when the plaintiff's shoe was taken off, it was mashed from the rear; he got the names of Lem Harris, Palmyra George, Johnny Jones, Frank Howard, who were standing on the sidewalk, which is about four feet from the car track; he saw plaintiff's foot caught in the step; it seemed that way to him; after the plaintiff fell the car moved about three feet and stopped; one foot was on the step and the other near the pavement; she was standing on the step when the conductor closed the door; before she could get her foot off it was caught in the step. He saw Palmyra, who was sick, on the morning of the trial.

Lem Harris was standing about 20 feet from the rear entrance of the car waiting to take it; as the plaintiff was getting off the car, it moved and it seemed

that the plaintiff got hung or hooked on something, he did not see what, and she fell; "they didn't have no light around there;" she did not draw his attention when she was on the steps; only when she fell; the doors were coming up as she was getting down; he did not see her feet caught in the step; he could not tell whether it was her feet or her dress, plaintiff fell straight out; her head was toward the curb and her feet were towards the car track; for the steps to close they have to go up.

Frank Howard did not know the name of the plaintiff, did not know her and never saw her before the day of the accident and does not know her now; he knows there were a couple of cars ahead of the one on which the accident happened, but does not know what line of cars; he had just crossed Erato street behind the car about 12 feet when the woman fell; her head was towards the river, and her feet partly towards the car; when he saw her she was falling; he did not see her feet in the step; he was not looking for that; if she had not fallen he would not have noticed her; "for her to come down off the car she must have put her foot on the step. I don't suppose she tried to step from the platform down to the pavement"; not paying much attention he does not know whether the car was at a perfect stop or just moving before he saw her fall; he knows "the car came to a stop after she was finished falling off the car"; it moved a couple of feet; he did not hear any bell; after she fell he noticed the doors were wide open; he is carman for the Illinois Railroad; he left as soon as the plaintiff was carried off in an automobile; Johnny Jones asked his name as a witness; Jones works for the railroad; he has known him for ten years; Jones was a witness to the accident; wit-

ness lives at 1206 Saratoga street in the block between Saratoga and Rampart; he "had crossed from the lower side of Erato to the upper side of Erato behind the street car just as the car was passing him".

"Q. As you got to the upper side of Erato street, the car stopped and your attention was attracted by the woman falling?

"A. Exactly."

He was going towards Rampart street. Street lights threw a dim reflection on the scene; he saw no portion of the woman's body or dress entangled in the car.

Johnny Jones said there were two cars ahead of the one on which the accident happened, the Clio, the Louisiana Avenue and the Freret; he was passing by and stopped; the cars were blocked and that caused him to stop and see what was the trouble; when he saw that it was a lady who had fallen off the car he thought it might be his wife; he got there before the accident about five minutes; he was ten feet from the accident; "there was passengers getting off the car, and this lady when she went to get off the car, the car moved, so she fell"; she had her right foot on the step, her left foot was on the ground; and the car moved as she fell; the woman fell when the car was moving and the conductor closed the door; when she fell her head was uptown and her right feet hung on the car step or "one of her feet"; Victor Jones helped to pick her up; when he got to the middle of the block all the three cars were there,. there was a blockading of the three cars; when he saw the plaintiff falling she had her right foot on the step and her left foot on the ground facing uptown; her "feet was caught in the step;" when she stepped from the platform to the step the car was standing still; she had one foot

on the step and one on the ground; the point of her shoe near the right toe was hung in the car; her feet were towards uptown; her face was facing uptown; her feet were facing "towards Saratoga, the rear of the car, towards Saratoga going towards Rampart".

Palmyra George was at the corner of Erato near Rampart waiting for a car, about 50 feet from the corner; when she got there, there were two cars standing, the Louisiana and the Clio, and afterwards the Freret car came in, in which the plaintiff was; there was no automobile behind the Freret car; "just as she (plaintiff) stepped down out of the car she had one foot down to the ground and the other was still on the step, and they closed the doors then, the steps, the spring steps, and her foot got caught"; the car was moving, it moved about five feet; the conductor gave the bell and the car started off before she was off the steps; then of course he opened .them (the doors) "to keep her from dragging"; her foot was caught; the doors "wasn't exactly closed not with her foot being caught in it"; she did not see whether it was in the door or in the step; she did not go up to see where her foot was entangled; there were so many people around, she could not see; she could not say which way her head was facing when she fell; she was not noticing that nor her feet; when she fell one foot was on the ground and the other was hooked in the step; she does not know Victor Jones; and does not know who gave her name as a witness; this is the second time she has seen the plaintiff; the Louisiana Avenue and Clio cars had gone before the Freret car stopped; her toe was caught; could not say whether it was the right or left foot; she did not see Lem Harris nor Johnny Jones.

The plaintiff testified as follows:

"I got out of the car on the left-hand side, and just as I got up to get out, I stepped on to the step; I put my right foot down and the car moved and he caught the left foot into the step; just as I stepped off of the car, I put my right foot on the step, then the left; then I stepped down to the ground with the right, and just as I went to step with the left foot the car moved, and I fell, and the 'left' foot caught into the step;" she then produced the shoe; but it happened to be the right shoe; she then testified that it was the "right" foot which was caught in the step; Victor Jones took her home; she did not know him before; she weighed 215 pounds; she paid $6.38 for drugs; Dr. Potts treated her for two months, for which he charged $40, and during which she remained in bed, and she suffered pains for six months; at the time she was thrown off the car she had not cleared it; her left foot was still upon it; she is 26 years of age; as she came out upon the platform to go out the car was still moving; the car stopped and the conductor opened the door; she stepped out on the front or left-hand side of the road and was not holding on to anything; she stepped from the platform to the step with her left foot, and then with the right on the step too; so that she was standing on the step with both feet, then she reached the ground with her right foot before the doors were closed or the car started; just as she put out her left foot to step upon the ground the conductor pulled the car off and that caused her to fall; then he raised the door and caught her right foot in the car; her right foot got to the ground before the doors were closed; she did not know Palmyra Jones and does not know how she became a witness; she did not know Victor Jones

before the accident; he got the names of the witnesses for her and brought her to her attorney in this case; just about a half-inch of her toe was caught in the step.

If the testimony of the above witnesses was the only evidence in the case we would fail to be convinced that the plaintiff had made out a case. The testimony of her witnesses is conflicting, contradictory, impossible, and unreliable, and such was the opinion of the district judge. The plaintiff rests her case upon two propositions: 1st. That the car was started while she was upon the steps in the act of descending; and 2nd. that the steps were raised while she stood upon them, and her foot was thereby caught in the doors as they closed. The first proposition is not established with sufficient certainty to entitle plaintiff to a judgment, and the second is impossible as defendant's evidence shows.

The defendants put a government official upon the stand as a witness and proceeded to ask him whether Victor Jones had resigned the service or whether he had been dismissed. The official testified that he was not permitted to testify as to any of the facts as to why Jones left the service or whether he resigned or was dismissed; only that "he severed his connection with the government on January 25th, 1925". The defendants did not examine the witness further.

Henry Gonzales was attending the dental college of Loyola; he was on the back platform of the street car from which the accident happened; he said: "This colored woman told the conductor to stop the car to get off; so the conductor did so, and this colored woman got some bundles in her left arm and she tried to get off the car, and to my opinion she made a misstep and fell."

"Q. Was the car moving when she fell?
"A. No, sir.
"Q. Did it move just at the time she was getting off?
"A. No, sir."

Elijah Lawson is a longshoreman; he was standing on Erato street about the distance of two cars from the corner of Rampart; he was waiting for the Freret car; when it came, he walked right back of it before the door was opened; when the door was opened, the plaintiff stepped out; nobody else, and she fell; the car was standing still; he saw no automobile back of the car; the conductor and another man helped her up; he did not see Victor Jones there; he saw no white person on the platform; nor any colored woman waiting for a car; the plaintiff fell from the step off the car; he saw her shoes; they were high heels, low quarters; "from the looks of them in the dark, in the half light they was shining like they was new."

Joseph Barnes is a window cleaner for the Guarantee Window Cleaning Company; he saw the accident; he was on the uptown side of the banquette on Erato street between Saratoga and Rampart; there were two cars there; he was behind the Freret car; the car was already stopped when he got there; he saw the plaintiff when she fell from the car, and he helped the conductor to sit her on the curb of the banquette; the car was stopped when she fell; he did not see anyone come up and offer to take her home in an automobile; the door was open while she was falling; they were not being closed; she no sooner fell than the conductor was out to assist her up.

Arthur Bordelon was the conductor of the car from which the accident happened;

his car stopped about two car lengths from Rampart street; the plaintiff came to him and said she wanted to stop; so he opened the safety doors and let her out; as she was getting off she fell; he got off the car and assisted her up and she sat down on the curbing; he did not close the doors on her as she was getting out; Joseph Barnes, a colored man, helped him to raise up the plaintiff after she fell; it was a safety door car, the doors open and close automatically by air, by means of a little bit of a lever turned on either side to close or open; he did not ring a bell for the motorman; the motorman is not supposed to start unless the conductor gives him two bells; he saw only one passenger get off and that was plaintiff; as the plaintiff was getting off of the step she fell; he made his report of the accident "as she was getting off she fell off"; when anybody is standing on the step of the car with any weight at all the safety step cannot be raised, because he tried it himself; he can hold it down with one finger; "you can turn the lever and put the air on to close the door and I will hold the door or the step with one finger and stop it from closing"; he tried it in his car already in the barn; people told him that if you put your hand in the door and let it close on you, it hurts you, and some said, "No, it doesn't hurt you"; and he tried it, and he let somebody else put the air on and let them close the door and the step; they both close at the same time.

Marshall O'Quinn was motorman for defendant company; he stopped his car two lengths from the corner of Rampart and Erato with the Louisiana Avenue car ahead of him; after that car had moved out, he received no signal to move on, and looking around the side of the car to see what the trouble was, he noticed the conductor on the outside on the ground with a pencil in his hand; he stepped out of his car and went back and found a woman sitting on the curb; he made only one stop.

The testimony of plaintiff's witnesses would have carried more weight had they not attempted to prove that while plaintiff was standing upon the steps, they were lifted by the air mechanism, which has been shown to be impossible. Their failure to establish that discredits their testimony when they attempt to prove that the car started prematurely.

In the case of Chester vs. N. O. Public Service, No. 151,260 of the District Court and No. 9712 of this court, the allegation was that, "when petitioner was on the step of said car, the doors having been opened, and in the act of stepping off said car, and when she was about placing one foot on the ground and had the other foot on the step of said car, and before she had time to get off safely from said car, the conductor closed the folding doors of said car, and the raising of the step of said car while the folding doors of said car were being closed, while petitioner was on the step of said car caused petitioner to be violently pitched to the ground below and injured painfully and seriously"; that petitioner was thrown to the ground due to the careless handling and raising of the step of said car and the closing of said car and the closing of its folding doors; that said conductor "deliberately started the car while petitioner was on the step of said car, before she had time to get off safely and injured her as stated herein"; that petitioner sustained said injuries through the gross carelessness of defendants' employees "in starting the said car prematurely, by raising the step of said car while she was in the step thereof, like-

wise the closing of its folding doors".

The conductor in that case testified that he did not, and that he could not, raise the steps with the weight of a person on the step. There was judgment for defendant in the District Court by a different judge from the one in this case, which judgment was affirmed by this court in the following language:

"The charges of negligence are: 1st. That while plaintiff was alighting from the car of defendants' Carondelet street line at Broadway and Spruce streets the conductor closed the folding doors and raised the step, thereby throwing her to the ground; 2nd. That the car was started and the step raised while she had one foot on the step."

The district judge rejected plaintiff's demand on the ground that he had failed to make out a case.

This court affirmed the judgment, and a writ was refused by the Supreme Court. See Opinion, Book 72.

We see no error in the judgment appealed from and it is therefore affirmed.